600 P.2d 286

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Judy ROBINSON, Defendant-Appellant.**

**No. 3673.**

Court of Appeals of New Mexico.

Jan. 2, 1979.

Charles W. Daniels, Freedman, Boyd & Daniels, Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Robert G. Sloan and Sammy J. G. Quintana, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of two counts—child abuse resulting in the death of her daughter, Adrianne, and child abuse resulting in great bodily harm to her daughter, Ashley. See § 40A–6–1(C), N.M.S.A.1953 (2d Repl. Vol. 6, 1975 Supp.). We discuss: (1) collateral estoppel; (2) severance; (3) evidentiary issues pertaining to Adrianne; (4) evidentiary issues pertaining to Ashley; and (5) instructions.

### Collateral Estoppel

By pretrial motion, defendant sought dismissal of the child abuse charge involving Ashley on the basis that prosecution of the charge was barred by the doctrine of collateral estoppel.

The basis for the motion was a Children's Court hearing on a petition asserting that Ashley was a neglected child. The neglect

grounds asserted were those set forth in § 13–14–3(L), subparagraphs 2, 5, 6(a) and 6(b), N.M.S.A.1953 (Repl. Vol. 3, pt. 1 and 1976–77 Int.Supp.). The Children's Court found neglect on two grounds: (a) lack of proper parental care under § 13–14–3(L)(2), supra; and (b) the parents had knowingly, intentionally or negligently placed the child in a situation that might endanger her life or health, see § 13–14–3(L)(6)(a), supra.

The Children's Court orally remarked: "I don't feel there has been a showing of abuse, and make no finding in that regard." Defendant's collateral estoppel argument is based on this remark. For the purposes of this case, we do not consider the effect of an oral remark as opposed to a written finding. See § 13–14–28(D), N.M.S.A.1953 (Repl. Vol. 3, pt. 1).

The Children's Court "abuse" remark is ambiguous, an ambiguity resulting from statutory differences. The finding that the parents had knowingly, intentionally or negligently placed the child in a situation that might endanger the child's life or health covers most of the elements of child abuse set forth in the criminal statute. See § 40A–6–1(C)(1), supra. These elements are also included within the definition of neglect in the Children's Code. See § 13–14–3(L)(6)(a), supra. The Children's Code, however, sets forth "abuse" as a separate definition of "neglect", see § 13–14–3(L)(5), supra. It was Children's Code "abuse" on which the Children's Code made no finding. As to "abuse", as defined in the criminal statute, the Children's Court affirmatively found most of the elements of the crime defined by § 40A–6–1(C)(1), supra. The Children's Court record is entirely silent as to the alternative criminal child abuse charged in the "neglect" petition; that alternative appears in § 40A–6–1(C)(2), supra.

Although the record as to the Children's Court "abuse" remark is ambiguous, we do not decide the collateral estoppel issue on the ambiguity.

*Paulos v. Janetakos,* 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237 (1942) states: "[A] prior judgment in a different cause of action between the same parties operates as an estoppel only as to questions, points or matters of fact in issue in that cause which were essential to a decision, and which were decided in support of the judgment." What is an issue of fact? "It must be a fact, the determination of which is material, relevant, and necessary to a decision of the case upon its merits". *Paulos v. Janetakos,* supra. This approach has not been changed by decisions on collateral estoppel in criminal cases. The discussion in *State v. Tijerina,* 86 N.M. 31, 519 P.2d 127 (1973) points out that in deciding a collateral estoppel issue, we look to the entire proceedings to determine whether the prior judgment could have been grounded upon an issue other than that which defendant seeks to foreclose from consideration.

One of the Children's Court findings of neglect was based on a definition of neglect which comports with criminal child abuse. Compare § 13–14–3(L)(6)(a), supra, with § 40A–6–1(C)(1), supra. There is no mention in the Children's Court proceedings of the criminal child abuse set forth in § 40A–6–1(C)(2), supra. Defendant's argument is based entirely on "abuse" as neglect under § 13–14–3(L)(5), supra, and not on neglect as defined in § 13–14–3(L)(6)(a) and (b), supra. This record affirmatively shows the Children's Court decision was based on "neglect" issues other than the "abuse" as "neglect" which defendant seeks to foreclose from consideration. There was no basis for the application of the doctrine of collateral estoppel.

*Severance*

Defendant did not file a pretrial motion for severance. After the jury was selected and sworn, and after opening statements of counsel, defendant moved to sever the two child abuse counts. She asserted that the two charges were unrelated and that she would be prejudiced if the two counts were jointly tried because there would be evidence that each of the children had skull fractures. We do not know on what basis the trial court denied the motion to sever. Two reasons sustain the denial.

The motion was untimely under Rule of Crim.Proc. 33. See *State v. Palmer,* 89 N.M. 329, 552 P.2d 231 (Ct.App.1976).

■ Defendant did not claim the two counts were improperly joined under Rule of Crim.Proc. 10; the charges were of a "same or similar character." Severance was sought under Rule of Crim.Proc. 34(a) on the basis of prejudice. The trial court's decision to deny severance in light of the prejudice claimed was a discretionary ruling; the appellate issue is whether there was an abuse of discretion. *State v. Schifani,* 92 N.M. 127, 584 P.2d 174 (Ct.App.1978). The record does not show an abuse of discretion.

*Evidentiary Issues Pertaining to Adrianne*

■ (a) Defendant asserts the charge involving Adrianne's death should not have been submitted to the jury because "there was no testimony establishing the cause of death of Adrianne." Defendant's argument incorrectly reviews the evidence in the light most favorable to herself. We review the evidence as to cause of death in the light most favorable to the State. *State v. Ewing,* 79 N.M. 489, 444 P.2d 1000 (Ct.App. 1968). Defendant recognizes that the cause of death may be established circumstantially. *State v. Coyle,* 39 N.M. 151, 42 P.2d 770 (1935); *State v. Adams,* 89 N.M. 737, 557 P.2d 586 (Ct.App.1976); *State v. Coulter,* 84 N.M. 647, 506 P.2d 804 (Ct.App.1973). She claims, however, that no expert witness specifically testified to a cause of death and, therefore, the evidence of the cause of death was not substantial. We disagree.

Adrianne had numerous bruises—head, forehead, cheeks, neck, chest, both arms, both sides of the body, back, buttocks and legs. There was also a large fracture on the left side of Adrianne's skull. Dr. Gile testified that Adrianne's injuries were consistent with the Battered Child Syndrome. See *State v. Adams,* supra. The large fracture on the left side of the skull had associated with it an area of subgaleal hemorrhaging with a collection of blood at the fracture site. Dr. Jones' testimony was to the effect that death was not consistent

with the Sudden Infant Death Syndrome, that a majority of the bruises were recent, occurring shortly before the time of death, and that the head bruises occurred at approximately the time of death. Dr. Milligan testified that a blow to the head severe enough to fracture the skull "absolutely" could cause death. This is substantial evidence for an inference that the bruises to the head and the skull fracture were the cause of death. See *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977).

(b) Dr. Jones performed the autopsy. He testified, without objection, that Adrianne had a healing fracture of the right thigh bone. Dr. Milligan testified that he had treated Adrianne for this injury. Defendant objected to testimony about this prior fracture and asserts the overruling of this objection was error. Dr. Milligan's testimony as to defendant's explanation of this fracture was that defendant had grabbed the leg and heard a "snapping" sound.

■ Defendant contends testimony concerning this fracture was irrelevant. Adrianne was born October 16, 1975. Dr. Milligan treated the fracture site on November 25, 1975 when the fracture was approximately one week old. Adrianne died February 11, 1976. Within this time frame, the fracture was relevant to the issue of child abuse.

■ Defendant contends that testimony concerning the fracture should not have been admitted under Evidence Rule 404(b). This rule permits evidence of wrongs or acts to prove an absence of accident. The testimony was properly admitted under this rule. She also contends that the probative value of the testimony concerning the fracture was outweighed by its prejudicial impact. The trial court ruled to the contrary. This record does not show this ruling was an abuse of discretion. See *State v. Fuson,* 91 N.M. 366, 574 P.2d 290 (Ct.App.1978).

*Evidentiary Issues Pertaining to Ashley*

(a) As to Ashley, the trial court submitted two child abuse instructions; one was child abuse resulting in great bodily

harm and one was child abuse not resulting in great bodily harm. If great bodily harm resulted, the felony was a second degree felony; if great bodily harm did not result, the felony was a fourth degree felony. Section 40A–6–1, supra.

The jury was instructed that "great bodily harm" means an injury which creates a high probability of death. Section 40A–1–13, N.M.S.A.1953 (2d Repl. Vol. 6). Defendant contends the evidence was insufficient to submit the "great bodily harm" issue to the jury.

Defendant asserts "not a single one of the witnesses testified that the injuries involved created a high probability of death." *State v. Bell,* supra, states: "[T]he law does not require that 'great bodily harm' be proved exclusively by medical testimony. The jury is entitled to rely upon rational inferences deducible from the evidence." If a rational inference of great bodily harm was deducible from the evidence, the evidence was sufficient.

Ashley, born November 25, 1976, was hospitalized in both June and July, 1977 as a "failure to thrive" baby. During the July, 1977 hospitalization, after a visit from defendant, Ashley had blood in her mouth and had occult blood in her stool for three or four days. On November 16, 1977 Ashley's pediatrician observed swollen bruised areas on her mid-forehead and below her left eye. Defendant told the doctor that Ashley had fallen against the kitchen table. According to the doctor, the injuries were not consistent with the explanation because there were two separate bruises which would have required two separate points of impact at the same time. On January 4, 1978 Ashley was hospitalized. She had a swollen tender area at the back right part of her skull, redness of both ear drums and superficial abrasions of the abdomen. She had bloody fluid in her middle ear and a break in the mid-ear space. She had a four-inch vertical, linear skull fracture underneath the swollen area of the skull. According to the doctor, defendant's explanation of a fall from a high chair was inconsistent with a fracture at the back of the skull.

The doctor testified it would take a lot of force to break the infant's skull; that the worst complication of the blow to the head would be death from swelling of the brain or a blood clot within the brain area. The doctor kept Ashley under close observation because of concern for a deterioration in her level of consciousness. The doctor considered such observation to be "most important".

■ The deceased child, Adrianne, had had a large fracture on the left side of her skull. This fact, together with the above evidence, permitted a rational inference by the jury that Ashley's injuries created a high probability of death. The trial court did not err in submitting the great bodily harm issue to the jury. See *State v. Hollowell,* 80 N.M. 756, 461 P.2d 238 (Ct.App. 1969).

(b) Cross-examining the pediatrician, defendant brought out that, in the past, the doctor had testified that Ashley was not an abused child. The context of the questioning indicates this testimony occurred prior to November, 1977. The cross-examination then brought out that the doctor was anticipating transferring his practice to someone else because the doctor had applied for a full-time position with the Los Lunas Hospital and Training Center, a State agency. Defendant then asked: "And haven't you changed that opinion now and that story as a result of applying for a job with a State agency?" Defendant argued to the trial court that the question was designed to show the doctor's bias and asserts, on appeal, that sustaining the objection to the question was error.

The State objected to the question on the basis that the question was no more than harassment of the witness. The trial court agreed, ruling that the question had nothing to do with the case—that is, the question was irrelevant.

■ Bias of a witness is always relevant. See *State v. Santillanes,* 86 N.M. 627, 526 P.2d 424 (Ct.App.1974). Assuming there could be a connection between the doctor's changed opinion and his application

for employment with a state medical facility, that connection was tenuous in the question asked. The doctor's testimony was based on incidents occurring subsequent to his prior testimony—his observations in November, 1977 and January, 1978. The obvious answer to the question would have been that his changed opinion was based on subsequent events and not because of his employment application. The question asked was marginal in developing bias. The record does not show the trial court abused its discretion in sustaining the objection to the question. *State v. Bell,* supra.

(c) A radiologist testified that X-rays showed Ashley had a skull fracture in July, 1977 and a different skull fracture in January, 1978.

 Defendant objected to testimony concerning the X-ray taken in January, 1978 on the basis there was "no guarantee" that the X-ray was of Ashley. The radiologist explained that the number on the X-ray film matched the X-ray number on the X-ray requisition request. The requisition request was in Ashley's name and had her medical record number. This was a prima facie identification that the X-ray was of Ashley. This prima facie identification was sufficient for admission of the X-ray over an objection on identification grounds. Testimony that X-rays can be, and are, mixed up by hospital employees went to the weight of the testimony, but did not bar admission of the X-ray. See *State v. Belcher,* 83 N.M. 130, 489 P.2d 410 (Ct.App.1971); *State ex rel. Hwy. Dept. v. Kistler-Collister Co., Inc.,* 88 N.M. 221, 539 P.2d 611 (1975); *Gass v. United States,* 135 U.S.App.D.C. 11, 416 F.2d 767 (D.C.Cir.1969); Annot., 5 A.L. R.3d 303, § 6(d) at 327 (1966).

 Defendant objected to the testimony concerning the X-ray taken in July, 1977 on the basis that such testimony was prejudicial and irrelevant. Testimony concerning a skull fracture in July, 1977 was relevant to the issue of child abuse. The fact that the testimony was adverse to defendant did not render it inadmissible on the basis that it was prejudicial. *State v. Hogervorst,* 90 N.M. 580, 566 P.2d 828 (Ct.App. 1977).

To the extent that defendant can be said to have made a chain of custody objection, see *State v. Chavez,* 84 N.M. 760, 508 P.2d 30 (Ct.App.1973). Other appellate arguments concerning the X-rays are not considered because not raised in the trial court. N.M.Crim.App. 308.

*Instructions*

The child abuse instructions as to both Adrianne and Ashley tracked the language of § 40A–6–1, supra, in stating the elements of the offenses. As to "neglect" child abuse, an instruction defined negligence in terms of tort negligence. Defendant did not object to these instructions in the trial court. On appeal, for the first time, defendant claims that negligence was improperly defined, that negligence in the child abuse statute means criminal negligence and that if the child abuse statute encompasses tort negligence, it is unconstitutional for a variety of reasons. We do not reach the merits of these contentions; however, see *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.1975) and *State v. Grubbs,* 85 N.M. 365, 512 P.2d 693 (Ct.App.1973).

 The instructions tracked the language of the statute; they covered all the essential elements of the crimes charged. See *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973). Defendant's contentions do not go to a failure to instruct on an element of the crime, but go to how "negligence" was defined. This is not a jurisdictional issue. *State v. Padilla,* 90 N.M. 481, 565 P.2d 352 (Ct.App.1977). Not having any objection in the trial court to the definition of negligence, that issue may not be raised for the first time on appeal. Rule of Crim. Proc. 41(d); *State v. Urban,* 86 N.M. 351, 524 P.2d 523 (Ct.App.1974).

There is no basis for defendant's claims of cumulative and fundamental error.

The judgment and sentences are affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.