670 P.2d 122

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jeanette WILLIAMS,
Defendant-Appellant.**

**No. 7001.**

Court of Appeals of New Mexico.

Sept. 1, 1983.

Certiorari Denied Sept. 29, 1983.

Janet Clow, Chief Public Defender, Mary Ann Lunderman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BIVINS, Judge.

Defendant appeals her conviction for child abuse contending that: (1) the evidence was insufficient to support the conviction; (2) the trial court applied an incorrect standard of liability; and (3) NMSA 1978, § 30–6–1(C) (Cum.Supp.1982), violates defendant's due process rights. We affirm.

### 1. Sufficiency of evidence.

Defendant concedes that her husband criminally abused her four-year-old daughter, Quenetta, on May 29, 1982. Nevertheless, defendant says the evidence presented will not support a conviction against her.

Relying on the guidelines established in *State v. Adams,* 89 N.M. 737, 557 P.2d 586 (Ct.App.1976), defendant argues that while the analysis in *Adams* allowed the conviction to stand in that case, it requires reversal here.

In *Adams* we said that for a failure to act to amount to negligence, there must be a failure to do an act which one has a duty to do and which a reasonably prudent person in the exercise of ordinary care would do in order to prevent injury to another.

To uphold the conviction the evidence must show that on May 29, 1982, defendant negligently, and without justifiable cause, permitted her daughter to either be placed in a situation that might endanger her life or health, or be cruelly punished, and that this abuse resulted in great bodily harm to the child. Section 30–6–1(C). The trial court found that defendant permitted both types of proscribed conduct to occur.

Applying traditional negligence analysis, we note that defendant does not deny her duty to care for and protect her child. Nor does she question the fact that Quenetta suffered injuries as a result of the beating. She primarily challenges the adequacy of

Paul Bardacke, Atty. Gen., Heidi Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

proof establishing breach of duty and proximate cause, on the basis that she could not foresee the occurrence.

The court found that Quenetta had many wounds of varying age on her body indicating that she had been beaten many times and that all the wounds, both new and old, resulted from repeated beatings. The medical proof supports this finding. Defendant acknowledged that her husband had beaten Quenetta in November of 1981. Even if the court did not consider any of the wounds related to the November beating, the physical evidence permitted an inference of more recent abuse. *See Adams.* Thus, the trial court could properly find that defendant could have foreseen the danger to her child's life or health. She lived in the same household with her husband and child, knew of her husband's violent nature, and his use of drugs. Although the child had previously been abused, defendant did not act. She allowed the child to remain in a situation where further abuse could occur. It did on May 29, 1982.

Defendant also argues that because she was five months pregnant at the time, beaten herself by her husband, and threatened by him, she could do nothing to prevent the beating. The issue is not whether defendant physically stopped the abuse, but whether she was negligent in failing to take some action to avoid foreseeable abuse or to seek help once it started.

The evidence as to defendant's own wounds conflicted. All conflicts in evidence must be resolved in favor of the verdict. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). The neighbors heard the beating, but did not hear defendant's voice at any time. Even if defendant could not stop her husband, this did not prevent her from seeking help. Another man, Jimmy Mayes, arrived with her husband and was there when the husband ordered defendant and Quenetta to " '[p]ull your clothes off, both of you got a whooping [sic] coming.' " Mayes remained for another ten minutes. Defendant could have asked Mayes for help or could have attempted to call the police or the neighbors.

Given the finding of repeated beatings, a reasonable inference can be drawn that defendant's failure to remove her child from the situation or her failure to seek help at the time of the incident was a proximate cause of Quenetta's injuries. *See Adams.* The evidence was sufficient for a rational juror to find guilt beyond a reasonable doubt. *See State v. Sheets,* 96 N.M. 75, 628 P.2d 320 (Ct.App.1981).

Substantial evidence supports the conviction.

### 2. Standard of liability.

Defendant claims that the trial court applied a standard that required conviction if her act or failure to act, no matter how reasonable under the circumstances, failed to prevent the beating. She relies on certain portions of the record not before us including oral statements made by the trial court at the conclusion of the trial. Oral statements made by the court before filing its decision have no binding effect unless included in the decision. *See Wray v. Pennington,* 62 N.M. 203, 307 P.2d 536 (1956).

She also relies on Finding Number 4, which states:

That the above-named defendant [Jeanette Williams], the mother and guardian of Quenetta Warren, failed *to stop this beating,* which the defendant was under a duty to do and which a reasonably prudent person in the exercise of ordinary care would have done in order to prevent injury to Quenetta Warren. (Emphasis added.)

We do not construe this finding as necessarily requiring that defendant physically stop her husband from beating the child. Failure to stop the beating can refer to failure to seek help, call neighbors, or take other action. Again, the question is not so much whether defendant failed to physically stop the beating herself, as it is whether she took any action to abate it before or once it started. Defendant's point has no merit.

### 3. Due process.

Defendant recognizes the child abuse statute has withstood previous chal-

lenges on constitutional grounds. *State v. Lucero,* 98 N.M. 204, 647 P.2d 406 (1982); *State v. Fulton,* 99 N.M. 348, 657 P.2d 1197 (Ct.App.1983); *see State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.1975). Defendant also acknowledges that the statute has been upheld on a void for vagueness challenge. *See State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.1978). `She does not argue lack of notice or fair warning, but instead asserts that the statute allows arbitrary and discriminatory enforcement, citing *Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

In *State v. Coe* we said that reasonable adults of common intelligence would have no difficulty in ascertaining the type of conduct proscribed by the statute. We see no reason why those charged with its enforcement would have any greater difficul-

ty. *State v. Coe* answers defendant's argument. Although the Supreme Court in *Kolender v. Lawson* examined an identification statute from an enforcement point of view, application of their analysis does not lead to a result different from that reached in *State v. Coe.* Defendant's constitutional challenge has no merit.

We affirm defendant's conviction.

IT IS SO ORDERED.

WOOD and DONNELLY, JJ., concur.