849 P.2d 358

**Vincent SANTILLANES, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

No. 20638.

Supreme Court of New Mexico.

March 1, 1993.

Sammy J. Quintana, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for petitioner.

Tom Udall, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

FROST, Justice.

We granted the defendant Vincent Santillanes' writ of certiorari to review the Court of Appeals decision affirming his conviction of child abuse under NMSA 1978, Section 30–6–1(C) (Repl.Pamp.1984). Santillanes' primary argument is that the provision in the statute under which he was convicted is unconstitutional because it improperly criminalizes ordinary civil negligence. He raises due process and fundamental fairness issues as well as equal protection and cruel and unusual punishment arguments. Santillanes also contests his conviction on the grounds of insufficiency of evidence, improper venue, prosecution under the wrong statute, and prosecutorial misconduct. Finding that all of his assigned errors are without merit except for his argument regarding the proper interpretation of the statute under which he was convicted, we address only that issue.

## I. FACTS

Santillanes cut his 7–year–old nephew's neck with a knife during an altercation. The jury convicted him of child abuse involving *no death or great bodily injury* under Section 30–6–1(C) on February 1, 1991.[1] Section 30–6–1(C) reads as follows:

> Abuse of a child consists of a person knowingly, intentionally or *negligently*, and without justifiable cause, causing or permitting a child to be:
>
> (1) placed in a situation that may endanger the child's life or health;
>
> (2) tortured, cruelly confined or cruelly punished; or
>
> (3) exposed to the inclemency of the weather.

NMSA 1978, § 30–6–1(C) (Cum.Supp.1992) (emphasis added).

---

**1.** When Santillanes was convicted, the offense was a fourth-degree felony; it is now a third- degree felony. *See* NMSA 1978, § 30–6–1 (Cum. Supp.1992).

After the close of all evidence, defense counsel submitted a requested jury instruction to the court setting forth a criminal negligence standard rather than a civil negligence standard to define the negligence element under the statute. Defendant's Requested Instruction No. 3 stated:

An act, to be "negligence" or to be done "negligently," must be one which a reasonably prudent person would foresee as creating a substantial and unjustifiable risk of injury to Paul Santillanes. The risk created must be of such a nature and degree that the reasonably prudent person's failure to perceive it involves a gross deviation from the standard of care that a reasonably prudent person would observe in the same situation.

The requested instruction was patterned after the definition of criminal negligence in Model Penal Code Section 2.02(2)(d) (1985). The trial court refused Santillanes' instruction and instead instructed the jury on a civil negligence standard. That instruction, Instruction No. 7, read:

The term "negligence" may relate either to an act or a failure to act.

An act, to be "negligence," must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to himself or to another and which such a person, in the exercise of ordinary care, would not do.

A failure to act, to be "negligence," must be a failure to do an act which one is under a duty to do and which a reasonably prudent person, in the exercise of ordinary care, would do in order to prevent injury to himself or to another.

The trial court apparently did not instruct the jury on the definition of "intentionally."

## II. *COURT OF APPEALS DECISION*

On appeal to the Court of Appeals, Santillanes claimed that the trial court erred in refusing his requested instruction that delineated a criminal negligence standard. He claimed that the term "negligently" in Section 30–6–1(C) either should be read to mean criminal negligence or that it should be deemed unconstitutionally vague or

overbroad in violation of due process of law. While it was not clear whether the jury convicted Santillanes of intentional or negligent child abuse, he argued that the court instructed the jury on both theories and that the jury could have convicted him on either theory. Because the trial court instructed the jury on the wrong standard of negligence, Santillanes argued, his conviction by general verdict must be overturned.

The Court of Appeals, however, held that Santillanes did not preserve for appeal the issue regarding the contested instruction because he failed to tender a proper instruction on the criminal negligence standard. The Court stated that the instruction which Santillanes requested was confusing because it did not permit the jury to evaluate the defendant's conduct by any meaningful standard. The Court also stated that his requested instruction incorrectly defined criminal negligence. Concluding that he failed to preserve this issue for appeal, the Court of Appeals held that Santillanes had no standing to complain of any violation of the due process clause.

Nevertheless, the Court of Appeals analyzed the record for fundamental error. The Court reasoned that because the evidence unmistakably established criminal negligence anyway, no justiciable issue existed in this case regarding any distinction between civil and criminal negligence in the statute.

## III. *ISSUES*

In this Court, Santillanes maintains that felony punishment should attach only to criminal behavior, in this case criminal negligence, not to ordinary civil negligence. Santillanes asserts that according felony status to acts of civil negligence violates substantive due process because the civil negligence standard is not tailored to meet the statutory goal of protecting children from abuse. Finally, Santillanes claims that as the Court of Appeals interpreted the statute, the civil negligence standard overreaches its mark and incorporates conduct that is not criminal, but rather simply negligent. Thus, he claims that the term

"negligently," as interpreted, is overbroad in violation of due process of law.

The State counters that the statute, as applied, only pertains to child abuse that goes beyond merely normal action or inaction. *See State v. Coe*, 92 N.M. 320, 321, 587 P.2d 973, 974 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978). According to the State, the Court in *Coe* limited the scope of the ordinary negligence standard because it interpreted the term "abuse" to require a showing of something more than just simple negligence or inadvertence even if it fell short of requiring a showing of criminal negligence. Thus, the State argues that the term "negligently," as interpreted in *Coe* and as applied in numerous other cases, is not constitutionally overbroad or vague. In addition, the State emphasizes that our courts have long interpreted the statute as requiring only a civil negligence standard and that there is no reason to change it now.

### A. Preservation of Issue

First, we must address the issue of whether Santillanes preserved the assigned error for appeal. The relevant rule states:

for the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed.

SCRA 1986, 5–608(D) (Repl.Pamp.1992). The Court of Appeals did not find that Santillanes failed to make a proper objection to the negligence instruction that the trial court gave to the jury. Rather, the Court ruled that Santillanes had no standing to raise his constitutional attack because he failed to preserve the issue when he submitted an incorrect instruction on criminal negligence. The Court of Appeals erred in its interpretation of Rule 5–608. *See Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992).

Under Rule 5–608, counsel must submit a proper instruction to preserve error only if no instruction is given on the issue in question on appeal. Here, the trial court gave an instruction on the issue in question on appeal, albeit a civil negligence instruction, and it is that issue which forms the basis of Santillanes' constitutional attack. Moreover, because there is no uniform jury instruction on criminal negligence in New Mexico, defense counsel relied on the Model Penal Code. While his proffered instruction was not a precise restatement of the Model Penal Code's definition of criminal negligence, defense counsel captured the essence of that definition and thus informed the trial judge of the claimed vice in the charge given to the jury. *See id.* We hold that Santillanes preserved his issue for appeal.

### B. Requirement of Criminal Negligence

At common law, the conviction of a crime required satisfaction of the element of intent. *See Perez v. State*, 111 N.M. 160, 161, 803 P.2d 249, 250 (1990). The legislature, however, may define certain conduct as criminal without the element of intent. *State v. Barber*, 91 N.M. 764, 766, 581 P.2d 27, 28 (Ct.App.1978). When a criminal statute is silent about whether a *mens rea* element is required, we do not assume that the legislature intended to enact a no-fault or strict liability crime. Instead, it is well settled that we presume criminal intent as an essential element of the crime unless it is clear from the statute that the legislature intended to omit the *mens rea* element. *See Reese v. State*, 106 N.M. 498, 501, 745 P.2d 1146, 1149 (1987) (Ransom, J., specially concurring). This determination is one of statutory construction in light of what the common law required. *Id.*

It is also well settled that the legislature has the authority to make negligent conduct a crime. *See State v. Lucero*, 87 N.M. 242, 245, 531 P.2d 1215, 1218 (Ct. App.), *cert. denied*, 87 N.M. 239, 531 P.2d 1212 (1975). The issue in this case, then, is not whether we must read the *mens rea* element into a criminal statute because the child abuse statute contains a *mens rea* element. Rather, the question is when the legislature has included but not defined the *mens rea* element in a criminal statute,

here the term "negligently," what degree of negligence is required.[2]

■ The State asserts that the legislature's "decision to criminalize the conduct described by [Section 30–6–1(C)] reflects a compelling public interest in protecting defenseless children" and thus was a proper exercise of the legislature's police power. *State v. Lujan,* 103 N.M. 667, 671, 712 P.2d 13, 17 (Ct.App.1985), *cert. denied,* 103 N.M. 740, 713 P.2d 556 (1986). The State also points out that the statute has withstood many constitutional attacks.[3] While it is undisputed that the statute's purpose is both legitimate and laudable, our interpretation of this criminal statute requires that the term "negligently" be interpreted to require a showing of criminal negligence instead of ordinary civil negligence.

### 1. *Prior Case Law*

In addressing the issue of whether a civil or criminal negligence standard must be applied under the child abuse statute, the courts of this state consistently have applied a civil negligence standard. In *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978), however, the Court of Appeals stated that the term "negligently" in the child abuse statute did not apply to ordinary situations in which a child was injured, but only when someone committed an abusive act against a child. *Id.* at 321, 587 P.2d at 974. The defendant in *Coe* argued that "negligently," in the ordinary civil sense, encompassed any and all harm to a child, thereby making the child abuse statute unconstitutionally vague so as to violate due process. *Id.* Rejecting that argument, the *Coe* court reasoned that the statute re-

quired "abuse" and not mere normal action or inaction. The Court concluded, therefore, that the statute was not void for vagueness because the statute gave fair notice of the proscribed conduct to any reasonable person. *Id.* Clearly, *Coe* called for a showing of something more than civil negligence, yet the bulk of our case law continually has countenanced an instruction requiring only ordinary tort negligence.

For example, in *State v. Williams,* 100 N.M. 322, 670 P.2d 122 (Ct.App.), *cert. denied,* 100 N.M. 259, 669 P.2d 735 (1983), the Court of Appeals rejected the defendant's argument based upon the due process clause that the child abuse statute allowed for arbitrary and discriminatory enforcement because it employed a civil negligence standard. *See id.* at 325, 670 P.2d at 125 (citing *State v. Coe, supra*). Relying on the traditional civil negligence analysis adopted in dictum in *State v. Adams,* the Court in *Williams* concluded that there was sufficient evidence to uphold the conviction of child abuse. *See Williams,* 100 N.M. at 324, 670 P.2d at 124; *see also State v. Adams,* 89 N.M. 737, 738, 557 P.2d 586, 587 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976) (determining that substantial evidence supported conviction of child abuse on civil negligence standard).

In *State v. Robinson,* 93 N.M. 340, 600 P.2d 286 (Ct.App.), *cert. denied,* 92 N.M. 532, 591 P.2d 286 (1979), the Court of Appeals, relying on *State v. Grubbs* and again in dictum, approved of the application of a civil negligence standard in the child abuse statute. *See id.* at 345, 600 P.2d at 291. The Court in *Robinson* declined to consider

---

**2.** It appears from our research that New Mexico's child abuse statute is unique in defining the proscribed conduct in terms of negligence rather than in terms of criminal or culpable negligence.

**3.** *See, e.g., State v. Lucero,* 98 N.M. 204, 647 P.2d 406 (1982); *State v. Crislip,* 110 N.M. 412, 796 P.2d 1108 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990); *State v. Williams,* 100 N.M. 322, 670 P.2d 122 (Ct.App.), *cert. denied,* 100 N.M. 259, 669 P.2d 735 (1983); *State v. Fulton,* 99 N.M. 348, 657 P.2d 1197, (Ct.App.1983); *State v. Robinson,* 93 N.M. 340, 600 P.2d 286 (Ct.

App.), *cert. denied,* 92 N.M. 532, 591 P.2d 286 (1979); *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978); *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975).

The only recorded dissent against the constitutionality of Section 30–6–1 is found in *Lucero,* 87 N.M. at 245, 531 P.2d at 1219 (Sutin, J., dissenting) (concluding that definition of "negligently" is inconsistent with definitions of "tortured," "cruelly confined," and "cruelly punished").

the merits of the defendant's claim that the ordinary tort negligence standard was unconstitutional because he raised that argument for the first time on appeal. *Id.*

The opinion in *State v. Grubbs*, 85 N.M. 365, 512 P.2d 693 (Ct.App.1973), seems to be the foundation for the application of the civil negligence standard in the child abuse statute. In *Grubbs*, the Court of Appeals upheld the defendant's conviction of involuntary manslaughter by unlawful act. *Id.* at 366, 512 P.2d at 694. The unlawful act of which the defendant was found guilty was negligent use of a weapon under what is now Section 30–7–4(A)(3). The defendant claimed that "negligence" should be interpreted as criminal negligence, but the *Grubbs* court disagreed and held that ordinary negligence was all that was required. *Id.* Noting that the statute failed to define "negligent," the Court applied its ordinary meaning because the legislature failed to indicate that it intended a different construction of the terms. *Id.* at 368, 512 P.2d at 696.

Most recently in *State v. Crislip*, 110 N.M. 412, 796 P.2d 1108 (Ct.App.), *cert. denied*, 110 N.M. 260, 794 P.2d 734 (1990), the Court of Appeals again tacitly approved the civil negligence standard for prosecution of child abuse. *Id.* at 419, 796 P.2d at 1115. The Court upheld the trial court's rejection of the defendant's tendered instruction on negligence, which was patterned after *Coe*, because it determined that the refused instruction was incorporated into the instruction setting forth an ordinary negligence standard. *Id.* at 418, 796 P.2d at 1114.

We have stated, however, in the context of a reckless driving conviction, that mere civil negligence "not amounting to wilful or wanton disregard of consequences cannot be made the basis of a criminal action." *See Raton v. Rice*, 52 N.M. 363, 365, 199 P.2d 986, 987 (1948). In *Raton v. Rice*, we went on to say broadly:

> [m]ere negligence is not sufficient. It may be sufficient to compel the driver to respond in damages. However, when it comes to responding to an accusation of involuntary manslaughter, *with the possibility of a penitentiary sentence*, a different rule is called into play.

*Id.* (quoting *State v. Sisneros*, 42 N.M. 500, 513, 82 P.2d 274, 281 (1938) (Zinn, J., concurring)) (emphasis added). We can find no clearly articulated basis for the rationale in *Raton v. Rice* except for the intuitive notion that a higher standard than tort negligence should be applied when the crime is punishable as a felony.

Indeed, most commentators urge the application of criminal negligence for felonies instead of the civil negligence standard. Typically, the commentators explain their preference for criminal negligence over civil negligence as a standard in criminal law by relying on common-sense justifications based upon the traditional application of heightened standards of culpability to crimes punishable with jail sentences.[4]

### 2. Case Law from Other Jurisdictions

Courts from other jurisdictions have wrestled with the issue of whether a civil negligence standard could apply in a criminal action. No other court has addressed the precise issue before us today, but the opinion in *State v. DeBerry*, 185 W.Va. 512, 408 S.E.2d 91, *cert. denied*, —— U.S. ——,

---

4. Noted scholars LaFave and Scott stated for example:

> It came to be the general feeling of the judges when defining common law crimes (not always so strongly shared later by the legislatures when defining statutory crimes) that something more was required for criminal liability than the ordinary negligence which is sufficient for tort liability. The thought was this: When it comes to compensating an injured person for damages suffered, the one who has negligently injured an innocent victim ought to pay for it; but when the problem is one of whether to impose criminal punishment on the one who caused the injury, then something extra—beyond ordinary negligence—should be required.

1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.7, at 326 (1986); *see also* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 842 (3d ed. 1982) ("Common sense compels the conclusion that there may be a grade or degree of fault sufficient to call for the payment of damages in a civil suit, but quite insufficient to authorize criminal punishment, and this is exactly the result reached by the common law.").

112 S.Ct. 592, 116 L.Ed.2d 616 (1991), comes closest. In that case, the Supreme Court of Appeals of West Virginia held that its child abuse statute, in which the operative element was "neglect," did not require a showing either of intent or civil negligence. The court rejected the defendant's claim that the statute was void for vagueness, holding instead that the legislature may define a crime without requiring a showing of intent. *See id.* at 516, 408 S.E.2d at 95 (citing *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975)). The court in *DeBerry* also rejected the State's equating of "neglect" with ordinary negligence, ruling instead that a higher degree of negligence was required. *See DeBerry,* 408 S.E.2d at 95 n. 6. Accordingly, the court held that the term "neglect" was not unconstitutionally vague in violation of due process of law. *Id.* at 96. No rationale was given, however, for the ruling that criminal negligence was required.

### 3. *Vagueness and Overbreadth*

We do not perceive the problem here as one in which persons of common intelligence must guess at the meaning of an element in a criminal statute and thereby differ as to its application, thus violating the vagueness doctrine under the due process clause of our Constitution. *See State v. Benny E.,* 110 N.M. 237, 243, 794 P.2d 380, 386 (Ct.App.1990).[5] Persons of common intelligence certainly could apply either the civil negligence standard or the criminal negligence standard without having to guess as to what conduct was proscribed under each standard.

██ Instead, we believe that the issue is more one of overbreadth than vagueness. In the ordinary sense of the word "overbroad," the term "negligently" in the child abuse statute has cast its net too far and encompasses conduct that the statute can-

not be interpreted to proscribe. The constitutional doctrine of overbreadth,[6] however, serves to invalidate a statute only when it sweeps so broadly to impinge unnecessarily on conduct protected by the First and Fourteenth Amendments. *See State v. Silva,* 86 N.M. 543, 547, 525 P.2d 903, 907 (Ct. App.), *cert. denied,* 86 N.M. 528, 525 P.2d 888 (1974); *see also State v. Pierce,* 110 N.M. 76, 81, 792 P.2d 408, 413 (1990). No such constitutionally protected conduct is involved here.

### 4. *Statutory Construction*

As discussed above, there is no basis for declaring the child abuse statute unconstitutional under the void for vagueness or overbreadth doctrines, both of which find their genesis in the due process clause. We believe that the real problem here is not one of legislative enactment, but instead one of judicial interpretation.

██ It is well-settled in our state that a statute defining criminal conduct must be strictly construed. *Bokum Resources Corp. v. New Mexico Water Quality Control Comm'n,* 93 N.M. 546, 549, 603 P.2d 285, 288 (1979). Any doubts about the construction of penal statutes must be resolved in favor of lenity. *State v. Leiding,* 112 N.M. 143, 145, 812 P.2d 797, 799 (Ct. App.), *cert. denied,* 112 N.M. 77, 811 P.2d 575 (1991). A criminal statute may not be applied beyond its intended scope, and it is a fundamental rule of constitutional law that crimes must be defined with appropriate definiteness. *State v. Bybee,* 109 N.M. 44, 46, 781 P.2d 316, 318 (Ct.App.1989).

We find guidance from an analogous situation in which courts have addressed whether a criminal statute that completely omits the mental state element required a showing of *mens rea* or whether it was a statute defining a strict liability crime. Generally, a regulatory measure arising

---

5. The vagueness doctrine is based on the principle of fair notice in that no one may be held criminally responsible and subject to criminal sanctions for conduct without fair warning as to the nature of the proscribed activity. *See State v. Najera,* 89 N.M. 522, 522, 554 P.2d 983, 983 (Ct.App.1976).

6. The legal doctrine of overbreadth applies when the statute in question has been interpreted as sweeping unnecessarily broadly, thus impinging on constitutionally protected conduct. *See* 16C C.J.S. *Constitutional Law* § 974, at 284 (1985).

from the exercise of the legislature's police power is aimed at the achievement of some societal good rather than at the punishment of a crime that is *malum in se,* or in other words, exhibiting an "evil mind." *See United States v. Balint,* 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922); *State v. Barber,* 91 N.M. at 766, 581 P.2d at 29. Serious nonregulatory crimes, on the other hand, generally proscribe conduct manifesting moral culpability. *See State v. Ortega,* 112 N.M. 554, 562, 817 P.2d 1196, 1204 (1991).

Penalties for regulatory or public welfare crimes having no element of *mens rea,* that is, strict liability crimes, have traditionally been relatively slight *Morissette v. United States,* 342 U.S. 246, 256, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952). To analogize, for example, each of the other criminal statutes in New Mexico in which "negligence" is an element also fail to define that term, but each of them is punishable as a petty misdemeanor, which is consistent with the view that only a showing of ordinary civil negligence is required. *See* NMSA 1978, § 30–7–4 (Repl.Pamp. 1984) (negligent use of deadly weapon); NMSA 1978, § 30–7–6 (Repl.Pamp.1984) (negligent use of explosives); NMSA 1978, § 30–8–13 (Repl.Pamp.1984) (negligently permitting livestock upon public highways). Conversely, when scienter is an element of the crime, the penalty generally is higher because "the infamy is that of a felony, which ... is 'as bad a word as you can give to man or thing.'" *Morissette,* 342 U.S. at 260, 72 S.Ct. at 248; *see, e.g.,* NMSA 1978, § 30–17–5(B) (Repl.Pamp.1984) (requiring recklessness as element of negligent arson, which is a felony). In other words, when moral condemnation and social opprobrium attach to the conviction of a crime, the crime should typically reflect a mental state warranting such contempt.

We believe that there is a reasonable doubt as to the intended scope of proscribed conduct under the child abuse statute. Strictly construing the statutory language in favor of lenity, and in the absence of a clear legislative intention that ordinary civil negligence is a sufficient predicate for a felony, we conclude that the civil negligence standard, as applied to the child abuse statute, improperly goes beyond its intended scope and criminalizes conduct that is not morally contemptible. *See State v. Grover,* 437 N.W.2d 60, 63 (Minn. 1989) (interpreting element of negligence in criminal statute as requiring criminal negligence, absent clear legislative declaration that civil negligence is sufficient standard for crime). Although not constitutionally protected, such conduct nevertheless lies beyond the intended scope of the statute. We construe the intended scope of the statute as aiming to punish conduct that is morally culpable, not merely inadvertent.

We interpret the *mens rea* element of negligence in the child abuse statute, therefore, to require a showing of criminal negligence instead of ordinary civil negligence. That is, to satisfy the element of negligence in Section 30–6–1(C), we require proof that the defendant knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child.

We do not find the absence of a definition of negligence in the statute indicative of legislative intent, and we are not persuaded by the State's contention that when the legislature has meant to apply a criminal negligence standard, it has specifically done so as in the case of negligent arson. *See* NMSA 1978, § 30–17–5(B) (Repl.Pamp.1984) (requiring recklessness as element of negligent arson). We also reject the State's contention that the legislature tacitly approved of the civil negligence standard as interpreted by our courts when it upgraded the violation of the child abuse statute from a fourth-degree felony to a third-degree felony in 1989. Instead, we find this concept firmly rooted in our jurisprudence: When a crime is punishable as a felony, civil negligence ordinarily is an inappropriate predicate by which to define such criminal conduct. *See Raton v. Rice,* 52 N.M. at 365, 199 P.2d at 987.

Because the child abuse statute contains no indication that the legislature intended felony punishment to attach to ordinary negligent conduct under Section 30–6–1(C), we do not address the constitutionality of that provision. *See Grover*, 437 N.W.2d at 63. We simply construe the statute as requiring at least a showing of criminal negligence in the absence of some contrary indication from the legislature that "the public interest in the matter is so compelling or that the potential for harm is so great that the interests of the public must override the interests of the individual" so as to justify civil negligence as a predicate for a felony. *See State v. Barber*, 91 N.M. 764, 765, 581 P.2d 27, 28 (Ct.App.1978) (setting out rationale for making act criminal without requiring element of intent).

### C. *Reversible Error*

 Having determined that the trial court committed error in failing to instruct the jury on a criminal negligence standard, we must now consider whether the error was harmless or whether it so undermined the reliability of the conviction or prejudiced the defendant's rights as to warrant reversal of his conviction. *State v. Orosco*, 113 N.M. 780, 783, 833 P.2d 1146, 1149 (1992). Failure to instruct the jury on an essential element of the charged offense has been held to be reversible error. *See Ortiz v. State*, 106 N.M. 695, 697, 749 P.2d 80, 82 (1988); *Reese v. State*, 106 N.M. 498, 501, 745 P.2d 1146, 1149 (1987); *State v. Mascarenas*, 86 N.M. 692, 694, 526 P.2d 1285, 1287 (Ct.App.1974). When there can be no dispute that the essential element was established, however, failure to instruct on that element does not require reversal of the conviction. *Orosco*, 113 N.M. at 784, 833 P.2d at 1150.

 Santillanes' defense was that his nephew injured himself when he jumped into a fishing line strung between two trees. He did not argue that he inadvertently caused the boy's throat to be cut. In addition, evidence in the record shows that his nephew's throat was cut from just below his right ear across to the left side of his neck below his jaw.

The jury found that Santillanes cut his nephew's throat with a knife during a scuffle. We believe that no rational jury could have concluded that Santillanes cut his nephew's throat, resulting in the injury described above, without satisfying the standard of criminal negligence that we have adopted today. Concluding that there could be no dispute that the element of criminal negligence was established by the evidence in the case, we hold that the error in instructing the jury on a civil negligence standard instead of a criminal negligence standard was not reversible error. *See id.* at 786, 833 P.2d at 1152.

### D. *Prospective Application*

 The question will arise as to whether our new interpretation of "negligently" under the child abuse statute is to be given retrospective or prospective application. *See State v. Jones*, 44 N.M. 623, 630–31, 107 P.2d 324, 329 (1940) (reliance on prior law is critical issue when considering retroactive application). The issue of retroactive effect arises only when a court's decision overturns prior case law or makes new law when law enforcement officials have relied on the prior state of the law. *State v. Kaiser*, 91 N.M. 611, 615, 577 P.2d 1257, 1261 (Ct.App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978). Many times in the past, the courts of this state have given prospective effect to new principles that changed existing law. *See, e.g., State v. Gonzales*, 111 N.M. 590, 598, 808 P.2d 40, 48 (Ct.App.), *cert. denied*, 111 N.M. 416, 806 P.2d 65 (1991) (proscription of prosecutor's systematic use of peremptory challenges to eliminate persons from jury on basis of race held to apply to all cases then pending on direct review, provided issue was raised and preserved below); *Washington v. Rodriguez*, 82 N.M. 428, 431, 483 P.2d 309, 312 (Ct.App.1971) (United States Supreme Court decisions in *Miranda* and *Escobedo* not applied retroactively).

 It is within the inherent power of this Court to give its decision prospective or retroactive application without offending constitutional principles. *Lopez v. Maez*, 98 N.M. 625, 632, 651 P.2d 1269, 1276

(1982). The United States Supreme Court in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), provided the framework for determining whether a judicial decision shall apply prospectively or retroactively. In *Linkletter*, Supreme Court considered whether to give retroactive application to the exclusionary rule that it announced in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Court held that the United States Constitution neither prohibits nor requires retroactive application of judicial decisions. *Linkletter*, 381 U.S. at 629, 85 S.Ct. at 1737–38. The Court then stated that retrospective or prospective application must be determined on a case by case basis by looking at three issues: the purpose of the new rule, the reliance placed upon the old rule, and the effect upon the administration of justice that retroactive application would have. *Id.* at 636, 85 S.Ct. at 1737, 1738; *see Whenry v. Whenry*, 98 N.M. 737, 739–40, 652 P.2d 1188, 1190–91 (1982) (applying criteria set out in *Linkletter*).

Law enforcement officials in this State have relied on the civil negligence standard in the child abuse statute for at least fifteen years. Our appellate courts on several occasions have upheld such convictions and approved of the application of the tort negligence standard. " 'The past cannot always be erased by a new judicial declaration,' " and we cannot remove every trace of the convictions predicated upon the civil negligence standard from our jurisprudence. *See Linkletter*, 381 U.S. at 636, 85 S.Ct. at 1737, 1738.

The purpose of the criminal negligence standard is to deter behavior that is culpable or, in other words, conduct that entails greater risk or fault than mere inadvertence or simple negligence. Applying this rule retroactively would not further its purpose because all such conduct was proscribed under the civil negligence standard, nor could it deter past conduct.

Finally, equal administration of justice and the integrity of the judicial process requires prospective application of the criminal negligence standard in the child abuse statute. To give our holding today retroactive effect would unduly burden the criminal justice system. It could reopen old wounds and create new scars for child abuse victims and their families, wounds that they may not have forgotten, but from which they may have healed and recovered.

Having weighed the considerations enunciated in *Linkletter*, we conclude that the inequities and injustices of retroactively applying the criminal negligence standard in the child abuse statute mandate the prospective application of our holding today.

## IV. CONCLUSION

■ The legislature is the proper branch of government to determine what behavior should be proscribed under its police power and thus to define criminal behavior and provide for its punishment. *State v. Dennis*, 80 N.M. 262, 264, 454 P.2d 276, 278 (Ct.App.1969). There are limits, however, to the power of the legislature. The legislature may properly exercise its police power only if the statute is reasonably necessary to prevent manifest or anticipated evil or if it is reasonably necessary to preserve the general welfare or the public health, safety, and morals. *Id.* As in the past, this Court disclaims any intention of even suggesting to the legislature how it might conduct its affairs. *See Dillon v. King*, 87 N.M. 79, 85, 529 P.2d 745, 751 (1974) (citing *Marbury v. Madison*, 5 U.S. [1 Cranch] 137, 2 L.Ed. 60 (1803)). Nevertheless, it is "our function and duty to say what the law is...." *Id.*

We emphasize that we are not defining the crime of negligent child abuse, thus usurping the police power of the legislature. Rather, we are interpreting the statute in light of traditional concerns regarding the intended scope of criminal statutes. We believe that the application of the civil negligence standard in the prosecution of child abuse under Section 30–6–1(C) goes beyond the statute's intended scope and impermissibly criminalizes innocent conduct. Converting a tort case into a criminal matter punishable as a felony is not what the statute intended.

In summary, because Section 30–6–1(C) has been interpreted to criminalize innocent conduct, although negligent in the civil sense, that interpretation is erroneous. All opinions of this Court and of the Court of Appeals, therefore, that are inconsistent in any way with the analysis contained herein regarding criminal negligence are expressly overruled.[7] The conviction of Santillanes, however, is affirmed in the absence of reversible error. The standard of criminal negligence that we have adopted today shall govern all cases which are now pending on direct review, provided the issue was raised and preserved below, and all cases presently pending but in which a verdict has not been reached.

**IT IS SO ORDERED.**

RANSOM, C.J., and BACA, MONTGOMERY, and FRANCHINI, JJ., concur.

---

**7.** Those opinions specifically overruled insofar as they employed a civil negligence standard in the prosecution of child abuse are: *State v. Crislip,* 110 N.M. 412, 796 P.2d 1108 (Ct.App.), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990); *State v. Williams,* 100 N.M. 322, 670 P.2d 122 (Ct.App.), *cert. denied,* 100 N.M. 259, 669 P.2d 735 (1983); *State v. Robinson,* 93 N.M. 340, 600 P.2d 286 (Ct.App.), *cert. denied,* 92 N.M. 532, 591 P.2d 286 (1979); *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978); and *State v. Adams,* 89 N.M. 737, 557 P.2d 586 (Ct.App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976).