91 P.3d 888 (2004)
151 Wash.2d 783
STATE of Washington, Respondent,
v.
Chayce HANSON, Appellant.
No. 74079-8.
Supreme Court of Washington, En Banc.
Argued October 28, 2003.
Decided June 17, 2004.
Suzanne Lee Elliott, Seattle, WA, for Appellant.
Norm Maleng, King County Prosecutor, James Whisman, Deputy, Stephen Paul Hobbs, Deputy, Seattle, WA, for Respondent.
IRELAND, J.
Chayce Hanson appealed his conviction for second degree felony murder predicated on assault for the death of 34 month old Nenah Walters. This court accepted direct review.
The primary issue in this case is whether Hanson's conviction for second degree felony murder should be vacated in light of this court's decision in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002). In Andress this court held that a conviction for second degree felony murder could not be based upon a predicate crime of assault. We hold that Andress applies prospectively to include cases not final under RAP 12.7. Hanson's case is not yet final; therefore, we vacate his sentence and remand *889 for further proceedings in accord with this decision.

FACTS
The State charged Hanson with the crime of second degree felony murder predicated on second degree assault committed between July 18, 2000 and July 19, 2000 for the death of 34 month old Nenah Walters and assault of a child in the third degree for acts committed on July 17, 2000. Clerk's Papers (CP) 62-63. A jury found Hanson guilty of second degree felony murder but not guilty of assault of a child in the third degree. CP at 128, 153-59. The sentencing court imposed a 300 month exceptional sentence.
Hanson appealed to the Court of Appeals. The State moved to transfer Hanson's appeal from the Court of Appeals to the Supreme Court. The commissioner granted the State's motion and the matter is now before this court.
A. STANDARD OF REVIEW
The standard of review for an issue involving questions of law is de novo. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999); Bishop v. Miche, 137 Wash.2d 518, 523, 973 P.2d 465 (1999).
B. ISSUE
Should the Andress decision be applied prospectively to a case which is not yet final?
C. ANALYSIS
The State asks the court to overrule Andress. We declined reconsideration and again decline the State's invitation to overrule Andress.
In Andress, we held that assault could not serve as a predicate to second degree felony murder. Both parties argue for prospective application of Andress but differ on whether Hanson is entitled to the benefit of the Andress decision. The State argues that Andress should apply "purely" prospectively, that is only to trials which have yet to begin or are still at trial where no verdict has been rendered, and not to cases where a conviction has been adjudicated.
Hanson argues that under In re Personal Restraint of St. Pierre, 118 Wash.2d 321, 823 P.2d 492 (1992), prospective application includes those cases not yet final including cases on appeal, and claims St. Pierre requires a vacation of Hanson's second degree murder conviction predicated upon assault.
The State relies on this court's decisions in other areas of law, public policy arguments, and decisions from other states in support of "purely" prospective application. The State submits that State ex rel. Washington State Finance Committee v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963) supports a prospective application of Andress. The Martin court opined:
If rights have vested under a faulty rule, or a constitution misinterpreted, or a statute misconstrued, or where, as here, subsequent events demonstrate a ruling to be in error, prospective overruling becomes a logical and integral part of stare decisis by enabling the courts to right a wrong without doing more injustice than is sought to be corrected.... The courts can act to do which ought to be done, free from the fear that the law itself is being undone.
Martin, 62 Wash.2d at 666, 384 P.2d 833.
The State asks this court to apply Andress "purely" prospectively, that is to cases not yet adjudicated to verdict, rather than adhering to the St. Pierre rule. The State offers several public policy arguments in support of applying Andress "purely" prospectively. First, that parties and lower courts reasonably relied on the court's interpretation of RCW 9A.32.030(1)(c) that assault could be a predicate to felony murder and should not be penalized for such a justifiable reliance. However, the State does not furnish authority for balancing the risk of uncertainty in favor of the State rather than the defendant.
Second, the State argues that "purely" prospective application of the Andress rule would allow citizens both notice and an opportunity to conform their conduct to law. The presumption against retroactive application "`"is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."'" State v. Cruz, 139 Wash.2d 186, 190, 985 P.2d 384 *890 (1999) (quoting Lynce v. Mathis, 519 U.S. 433, 439, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). The prohibition against retroactive law concerns situations that burden the citizen. See generally U.S. Const. art. I, §§ 9-10 (prohibiting both Congress and States from passing ex post facto laws); In re Pers. Restraint of Stanphill, 134 Wash.2d 165, 949 P.2d 365 (1998) (ex post facto laws disadvantage citizens because they impose punishment for an act which was not punishable when committed, or increased the quantum after the crime was committed). Andress' holding that assault cannot serve as a predicate offense to second degree felony murder does not set out a new rule proscribing a certain activity nor does it increase punishment after the crime was committed. The State's second public policy argument does not weigh in favor of "purely" prospective application of Andress.
Third, the State contends that "purely" prospective application is consistent with stare decisis because the court's prior felony decisions holding that assault could serve as predicate to second degree felony murder were no less definitive and binding than the rule of law announced in Andress. See State v. Crane, 116 Wash.2d 315, 804 P.2d 10 (1991); State v. Wanrow, 91 Wash.2d 301, 588 P.2d 1320 (1978); State v. Thompson, 88 Wash.2d 13, 558 P.2d 202 (1977); State v. Tamalini, 134 Wash.2d 725, 953 P.2d 450 (1998). While it is true that those cases involved a conviction for murder predicated on assault, none of them dealt with the issue in Andress. Wanrow and Thompson involved a prior version of the second degree felony murder statute.[1] In Crane, we declined to address the issue of whether assault could serve as a predicate to second degree felony murder. Crane, 116 Wash.2d at 333, 804 P.2d 10. Tamalini, did not address whether an assault could serve as a predicate to felony murder.[2]
Further, the State cites to cases decided by the highest courts in California, Kansas, New Mexico, and Michigan to support "purely" prospective application. The California and Kansas cases applied a rule prospectively to include cases where appeal as a matter of right had not yet been exhausted and do not support the rule that the State seeks. The New Mexico and Michigan cases support the rule that the State requests.
California applied its holding that a person could not be convicted of felony murder when the underlying offense charged was felony child abuse only prospectively to cases not yet final. La Rue v. McCarthy, 833 F.2d 140 (9th Cir.1987). La Rue was convicted of second degree felony murder in 1980 with felony child abuse as the predicate offense. The California Court of Appeals affirmed La Rue's conviction in 1981. Id. at 143. Three years later, the California Supreme Court in People v. Smith, 35 Cal.3d 798, 801, 678 P.2d 886, 201 Cal.Rptr. 311 (1984), held that a person could not be convicted of second degree felony murder predicated upon the crime of felony child abuse. La Rue filed petitions for a writ of habeas corpus seeking to collaterally attack his conviction under Smith. The California Court of Appeals and California Supreme Court denied the petition. La Rue then filed a habeas corpus petition with the federal district court which was denied and affirmed by the Ninth Circuit. La Rue, 833 F.2d 140.
In Easterwood v. Kansas, 273 Kan. 361, 44 P.3d 1209 (2002), Easterwood pleaded guilty to felony murder, aggravated robbery, and assault. Easterwood filed a postconviction habeas corpus petition with the trial court, which was denied. Easterwood appealed denial of his collateral attack to the Kansas Supreme Court. While Easterwood's collateral attack appeal was pending, the Kansas Supreme court ruled in State v. Sophophone, 270 Kan. 703, 19 P.3d 70 (2001) that a defendant could not be convicted of felony murder for the killing of his "co-felon," not caused by the defendant's acts. Easterwood amended his collateral attack arguing that Sophophone *891 should be applied retroactively to vacate his felony murder conviction. However, the court applied its new rule prospectively to cases not yet final.
In the third case cited by the State, New Mexico interpreted negligence under its child abuse statute to require criminal negligence and overruled previous precedent that allowed convictions based on simple negligence. The New Mexico court applied its decision prospectively to include cases that have not reached a verdict. Santillanes v. New Mexico, 115 N.M. 215, 849 P.2d 358 (1993).
In People v. Aaron, 409 Mich. 672, 299 N.W.2d 304 (1980), Aaron was convicted of first degree felony murder as a result of a homicide committed during the perpetration of an armed robbery. The Michigan Supreme Court concluded that "Michigan has no statutory felony-murder rule which allows the mental element of murder to be satisfied by proof of the intention to commit the underlying felony." Id. at 733, 299 N.W.2d 304. The court reversed Aaron's conviction stating that the decision applied prospectively to trials in progress and trials occurring after the date of the opinion. Id. at 734, 299 N.W.2d 304. While Santillanes and Aaron support the states request for a "purely" prospective rule, the cases are in conflict with St. Pierre.
We now turn our attention to St. Pierre which Hanson urges us to retain as controlling authority. St. Pierre was found guilty of "first degree felony murder, first degree kidnapping, and second degree assault in the death of Damon Wells." St. Pierre, 118 Wash.2d at 323, 823 P.2d 492. At trial, the jury was instructed that if it failed to find St. Pierre "guilty of the charged crime of aggravated first degree murder" it could find St. Pierre guilty of a lesser included offense of "premeditated murder in the first degree, felony murder in the first and second degree, and murder in the second degree." Id. at 324, 823 P.2d 492. On appeal, the court affirmed St. Pierre's first degree felony murder conviction of Wells and St. Pierre moved for reconsideration. Eight days before the court denied the motion for reconsideration, the court decided State v. Irizarry, 111 Wash.2d 591, 763 P.2d 432 (1988), which concluded that felony murder was not an included offense within the offense of aggravated first degree murder. St. Pierre brought a personal restraint petition seeking retroactive application of Irizarry. We concluded that St. Pierre's conviction was not yet final since we announced the rule in Irizarry eight days before denying St. Pierre's motion for reconsideration and that St. Pierre was entitled to the benefit of Irizarry. However, we affirmed the Court of Appeals' dismissal of St. Pierre's petition because the petitioner failed to establish actual and substantial prejudice of the error.
St. Pierre sets out current prospective application analysis in Washington. The analysis derives from two United States Supreme Court cases. In Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Court held that a new rule applies prospectively to all cases pending on direct review or not yet final. In Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court held that a new rule will not be given retroactive application to cases on collateral review except when either (a) the new rule places certain kinds of primary, private individual conduct beyond the power of the state to proscribe, or (b) the rule requires the observance of procedures implicit in the concept of ordered liberty. Teague, 489 U.S. at 290, 109 S.Ct. 1060.
A new rule breaks new ground or imposes a new obligation. Teague, 489 U.S. at 301, 109 S.Ct. 1060. A new rule is a "result ... not dictated by precedent existing at the time the defendant's conviction became final." Id. As stated in St. Pierre, the rule based on those cases is that a new rule prospectively applies to cases not yet finalized unless a collateral review exception is present. "The critical issue in applying the current [prospectivity] analysis is whether the case was final when the new rule was announced." St. Pierre, 118 Wash.2d at 327, 823 P.2d 492. The St. Pierre Court interpretation of finality is consistent with RAP 12.7.
We have stated that "[o]ur appellate court procedural rules provide two methods of seeking review of trial court decisions. One is review as a matter of right, called an `appeal', and the other is review by permission *892 of the reviewing court, called `discretionary review.'" In re Dependency of Grove, 127 Wash.2d 221, 235, 897 P.2d 1252 (1995) (citing RAP 2.1(a)). We held in St. Pierre that finality of a case is to be contemplated as a whole and not the finality of a single issue. RAP 12.7 defines the finality of a decision by an appellate court.[3] Once an appellate decision is final, review as a matter of right is exhausted.
The State's "purely" prospective application would exclude Hanson from the benefit of Andress because Hanson's had been adjudicated to verdict. The State asks the court to adopt a prospective application rule that is a departure from this court's decisional law in St. Pierre, which applied new rules prospectively to nonfinalized cases. Further, while the State cites to cases from other states for a "purely" prospective application of Andress, those cases did not use a "purely" prospective application with the exception of Santillanes and Aaron. La Rue, 833 F.2d 140; Santillanes, 115 N.M. 215, 849 P.2d 358; Aaron, 409 Mich. 672, 299 N.W.2d 304; Easterwood, 273 Kan. 361, 44 P.3d 1209. The two cases the State relies on for a "purely" prospective analysis are in conflict with St. Pierre. We prefer the bright line established by St. Pierre. Hanson's case falls squarely to our decision in St. Pierre to which we adhere. We hold that Andress applies prospectively to include cases not yet final when the Andress decision was decided. We vacate Hanson's sentence because his case was not yet final under RAP 12.7 when Andress was decided and remand for further proceedings in accord with this decision. We do not reach Hanson's other issues having decided that Hanson's conviction is vacated.

CONCLUSION
The State fails to make any compelling arguments for a deviation from normal prospective application used by this court and other jurisdictions. We hold that the St. Pierre rule of prospective application applies to the Andress decision. Here, Hanson's case is on appeal as a matter of right. His case is not yet final under RAP 12.7. Hanson is entitled to the benefit of our holding that assault is not a predicate to second degree felony murder. We vacate Hanson's sentence and remand for further proceedings in accord with this opinion. Andress, 147 Wash.2d at 616 n. 5, 56 P.3d 981.
ALEXANDER, C.J., JOHNSON, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
ALEXANDER, C.J. (concurring).
Although I concur with the majority's resolution of this case, I write separately to explain why I believe it would be inappropriate for this court to determine here whether our decision in In re Personal Restraint of Andress, 147 Wash.2d 602, 56 P.3d 981 (2002) constitutes an initial interpretation of the felony murder statute or merely a reinterpretation. "As a general rule, this court will decide only such questions as are necessary for a determination of the case presented for consideration, and will not render decisions in advance of such necessity, particularly when the question is a constitutional one, or involves the construction of a statute." Johnson v. Morris, 87 Wash.2d 922, 931, 557 P.2d 1299 (1976) (emphasis added). At oral argument, Chayce Hanson's attorney opined that Andress was an initial construction of the felony murder statute but indicated that this was only a "secondary argument." Wash. State Supreme Court oral argument, State v. Hanson, No. 74079-8 (Oct. 28, 2003), audio recording by TVW, *893 Washington State's Public Affairs Network, available at http://www.tvw.org. Hanson's attorney stated that the reason for not primarily relying on this contention was that Hanson's conviction must be overturned regardless of whether our decision in Andress was the initial interpretation or a reinterpretation. Thus, the majority properly limits its consideration to the effect that Andress has on cases that are not yet final, as defined by RAP 12.7.
MADSEN, FAIRHURST, and SANDERS, JJ., concur.
NOTES
[1] Former RCW 9.48.040, repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010.
[2] The two issues facing the court in Tamalini were: (1) is first or second degree manslaughter a lesser included offense of second degree felony murder; and (2) is first or second degree manslaughter an inferior degree of second degree felony murder. Tamalini, 134 Wash.2d at 728, 730, 953 P.2d 450.
[3] RAP 12.7 defines when a case is final and reads in part:

(a) Court of Appeals. The Court of Appeals loses the power to change or modify its decision (1) upon issuance of its mandate in accordance with rule 12.5, except when the mandate is recalled as provided in rule 12.9, (2) upon acceptance by the Supreme Court of review of the decision of the Court of Appeals, or (3) upon issuance of a certificate of finality as provided in rules 12.5(e) and rule 16.15.(e).
(b) Supreme Court. The Supreme Court loses the power to change or modify a decision of the Court of Appeals upon issuance of the mandate of the Court of Appeals in accordance with rule 12.5, except when the mandate is recalled as provided in rule 12.9. The Supreme Court loses the power to change or modify a Supreme Court decision upon issuance of the mandate of the Supreme Court in accordance with rule 12.5, except when the mandate is recalled as provided in rule 12.9.