**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



This opinion was filed for record

at 8:00 a.m. on Nov. 30, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 93605-6 |
| Respondent, | |
| v. | EN BANC |
| MARCO BAILON WENCES, | |
| Petitioner. | Filed    NOV 3 0 2017 |

STEPHENS, J.—In *State v. Williams-Walker*, 167 Wn.2d 889, 899-900, 225 P.3d 913 (2010), this court held that article I, sections 21 and 22 of the Washington State Constitution prohibit a sentencing court from imposing a firearm enhancement based on a deadly weapon special verdict finding. We subsequently recognized that *Williams-Walker* announced a new rule of criminal procedure, applicable to all cases pending at the time it was decided. *In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 634, 272 P.3d 188 (2012). Our holding in *Eastmond* adhered to the long-standing principle that "[a] new rule for the conduct of criminal prosecutions is to be applied . . . to all cases, state or federal, pending on direct review or not yet final."

*In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987)).

The question in this case is whether the rule in *Williams-Walker* applies to appellate review of Marco Wences's 2015 sentence. The obvious answer to this question—yes—is obscured by the fact that Wences's sentence was imposed for a conviction dating back to 2005. Concluding that Wences "should not benefit from changes in the law that apply to him solely because he absconded and delayed his sentencing," the Court of Appeals affirmed the superior court's decision to impose a firearm enhancement based on pre-*Williams-Walker* law. *State v. Wences*, No. 73333-8-I, slip op. at 7 (Wash. Ct. App. July 25, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/733338.pdf. We hold that this result is impermissible under settled law. We reverse the Court of Appeals and remand to the superior court for resentencing consistent with *Williams-Walker*.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Following a search of Wences's car in 2003, the State charged him with possession of a controlled substance (methamphetamine) with intent to manufacture or deliver. The State also alleged that Wences was armed with a firearm during the commission of the crime. A jury convicted Wences of all charges in 2005. The trial court instructed the jury that a firearm is a deadly weapon, and the jury answered

-2-

yes to a special verdict form that asked whether Wences was "armed with a deadly weapon at the time of the commission of the crime." Clerk's Papers (CP) at 30.

Wences did not appear for a scheduled sentencing hearing in 2005. Starting around that time, our law on firearm and deadly weapon enhancements was evolving. *See State v. Recuenco*, 154 Wn.2d 156, 110 P.3d 188 (2005) (*Recuenco* I), *rev'd and remanded on other grounds*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (*Recuenco* II), *on remand*, 163 Wn.2d 428, 180 P.3d 1276 (2008) (*Recuenco* III); *Williams-Walker*, 167 Wn.2d 889. Our cases considered the import of two earlier United States Supreme Court decisions interpreting the Sixth Amendment right to a jury trial under the United States Constitution. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."). In those decisions, the Supreme Court held "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The "'statutory maximum'" in this context is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences (Marco Bailon)*, 93605-6

Building on these Supreme Court decisions, this court recognized that "[i]n Washington there are two types of deadly weapon sentence enhancements: firearm sentence enhancements and deadly-weapon-other-than-a-firearm sentence enhancements." *Eastmond*, 173 Wn.2d at 635; *see also* RCW 9.94A.533(3), (4). In two cases, we specifically addressed whether a sentencing court can constitutionally impose a firearm enhancement where the jury's special verdict finding authorizes only a deadly weapon enhancement. *Recuenco* I, 154 Wn.2d at 158-59; *Williams-Walker*, 167 Wn.2d at 892.

In *Recuenco* I, this court held that "[w]ithout an explicit firearm finding by the jury, [a] court's imposition of a firearm sentence enhancement violate[s] [a defendant's constitutional right to a] jury trial." 154 Wn.2d at 162; WASH. CONST. art. I, § 21 ("The right of trial by jury shall remain inviolate."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury."). Next, in *Williams-Walker*, this court held that "[a] sentence enhancement must not only be alleged, it also must be authorized by the jury *in the form of a special verdict.*" 167 Wn.2d at 900 (emphasis added). "Disregard of . . . the special verdicts violates [a] defendant['s] right[] to a jury trial under article I, sections 21 and 22 [of the Washington Constitution]." *Id.* at 899-900. In sum, by 2010 it was clear under Washington law that, "[w]hen the jury is

-4-

instructed on a specific enhancement and makes its finding, the sentencing judge is bound by the jury's finding." *Id.* at 899.

In 2015, Wences appeared pursuant to a warrant for his arrest and the court set a sentencing hearing on his 2005 conviction. Per the State's recommendation, the court sentenced Wences to 100 months of confinement, including a 64-month standard range base sentence and a 36-month firearm enhancement. The State noted that its recommendation was "a lengthier recommendation than would have been made had [Wences] not failed to appear [at his sentencing hearing in 2005]." Verbatim Tr. of Proceedings on Appeal (VTP) (Mar. 23, 2015) at 3.

Wences appealed his sentence, arguing that because the jury verdict authorized only a deadly weapon enhancement, the sentencing court violated his constitutional right to a jury trial when it imposed the lengthier firearm enhancement. Br. of Appellant at 21-22 (relying on *Williams-Walker*, 167 Wn.2d at 897). The State countered that the jury instructions, read together with the special verdict form, authorized the firearm enhancement. *See* Br. of Resp't at 14-17. Division One of the Court of Appeals upheld Wences's sentence on grounds raised sua sponte. *Wences*, slip op. at 6-8. That court stated:

> While Wences' judgment and sentence was not final until 2015, it would
> have been final prior to both *Recuenco* and *Williams-Walker* but for Wences'
> flight and the consequent 11-year delay of his sentencing. A defendant

-5-

should not benefit from changes in the law that apply to him solely because he absconded and delayed his sentencing.

*Id.* at 7.[1]

Wences filed a petition for review in this court, which we granted. *State v. Wences*, 187 Wn.2d 1016, 388 P.3d 761 (2017). He challenges only the lawfulness of his enhanced sentence. Pet. for Review at 14.

## ANALYSIS

We must decide whether the rule in *Williams-Walker* applies to appellate review of Wences's sentence. But for the fact that Wences was convicted in 2005, this would be a straightforward case because the judgment and sentence under review were entered in 2015, five years after the decision in *Williams-Walker*.[2] *See,*

---

[1] The Court of Appeals did not call for additional briefing from the parties on the question of whether Wences's flight precluded him from benefiting from *Williams-Walker*.

[2] The Court of Appeals acknowledged that Wences's "judgment and sentence was not final until 2015." *Wences*, slip op. at 7. It looked to the law in 2005 on the premise that Wences's case "would have been final prior to both *Recuenco* and *Williams-Walker* but for [his] flight and the consequent 11-year delay of his sentencing." *Id.* While this result was a possibility, it was by no means certain. The relevant law was evolving quickly at the time of Wences's original sentencing hearing in 2005. Wences's case could have been stayed pending *Recuenco* I, which this court decided only six days after Wences's anticipated sentencing date. *See, e.g., State v. Bainard*, 148 Wn. App. 93, 100-01, 111, 199 P.3d 460 (2009) (appeals court stayed case pending *Recuenco* I and subsequently applied *Recuenco* III on appeal); *see also* Mot. for New Trial Sentencing (Apr. 8, 2005) at 2 (Wences's counsel moved to continue sentencing for two weeks). Even had Wences's case not been stayed, he may have brought a successful ineffective assistance of counsel claim on that basis. *See, e.g., In re Pers. Restraint of Netherton*, 177 Wn.2d 798, 801-03, 306 P.3d 918 (2013) (finding prejudice supported vacating the defendant's firearm

-6-

*e.g.*, *State v. Taylor*, 150 Wn.2d 599, 601, 80 P.3d 605 (2003) ("In a criminal proceeding, a final judgment 'ends the litigation, leaving nothing for the court to do but execute the judgment.'" (internal quotation marks omitted) (quoting *In re Det. of Petersen*, 138 Wn.2d 70, 88, 980 P.2d 1204 (1999))); *see also State v. Siglea*, 196 Wash. 283, 286, 82 P.2d 583 (1938) ("In a criminal case, it is the sentence that constitutes the judgment against the accused, and, hence, there can be no judgment against him until sentence is pronounced."). Given that "the rule announced in *Williams-Walker* is a new rule" of criminal procedure, *Eastmond*, 173 Wn.2d at 634, settled precedent required the Court of Appeals to consider Wences's challenge to his sentence in light of *Williams-Walker*.

As noted, "[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *St. Pierre*, 118 Wn.2d at 326 (citing *Griffith*, 479 U.S. at 328).[3] Simply stated, "[A]ll new rules . . . must be applied to all cases subject to direct review at the time the rule is announced." *Id.* at 325-26; *see id.* at 324-26 (describing the

---

enhancement because had counsel moved to stay pending *Recuenco* III, the court likely would have decided the case in light of *Recuenco* III to the defendant's benefit).

[3] Although *St. Pierre*, *Griffith*, and *Eastmond* concerned retroactive application of a new rule, they also set "out current prospective application analysis in Washington." *State v. Hanson*, 151 Wn.2d 783, 789, 91 P.3d 888 (2004). "As stated in *St. Pierre*, the rule based on those cases is that a new rule prospectively applies to cases not yet finalized." *Id.* at 790.

evolution of the Supreme Court's retroactivity analysis, which this court has "attempted from the outset to stay in step with"). "The critical issue in applying the current retroactivity analysis is whether the case was final when the new rule was announced." *Id.* at 327. "'[F]inal' for the purposes of retroactivity analysis . . . 'mean[s] a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.'" *Id.* (quoting *Griffith*, 479 U.S. at 321 n.6).

Applying new law that arises during the pendency of a direct appeal, appellate courts regularly reverse sentences that would have been valid under former law and remand for resentencing. *See, e.g., State v. Hanson*, 151 Wn.2d 783, 791, 91 P.3d 888 (2004) (vacating the defendant's sentence and remanding for further proceedings because the defendant's case was not final when the new rule was announced); *see also State v. McNeal*, 142 Wn. App. 777, 786-87, 787 n.13, 175 P.3d 1139 (2008) (holding *Blakely* applies on remand when the defendant's sentence is vacated on appeal and resentencing on remand constitutes a new sentencing proceeding). *But see State v. Rowland*, 174 Wn.2d 150, 155-56, 272 P.3d 242 (2012) (holding *Blakely* does not apply on remand when the trial court does not disturb factual findings or increase the defendant's sentence).

Our precedent makes clear that we "prefer the bright line established by *St. Pierre*." *Hanson*, 151 Wn.2d at 791. While we may sympathize with the desire of the lower court and the dissent to find an exception for Wences's particular situation, given his decision to abscond, creating an exception for this unusual case comes at too high a cost to established principles of finality and standards for applying new rules of criminal procedure to cases on direct appeal.[4] Because we have previously recognized that the "State may pursue [separate,] additional charges for the act of fleeing," we reject introducing a punishment paradigm into our analysis. *State v. French*, 157 Wn.2d 593, 602, 141 P.3d 54 (2006); *see also Ortega-Rodriguez v. United States*, 507 U.S. 234, 247, 113 S. Ct. 1199, 122 L. Ed. 2d 581 (1993) ("flight is a separate offense punishable" by the trial court). At any rate, the State acknowledges that it has accounted for Wences's flight insofar as the State's sentencing recommendation was "a lengthier recommendation than would have been

---

[4] The dissent's analogy to cases that dismissed appeals as abandoned misses the mark. *See* dissent at 2-3. The parties agree that Wences did not knowingly waive or abandon his appeal. More importantly, there is no justification for a court to impose an unlawful, indeed unconstitutional, sentence. *See Williams-Walker*, 167 Wn.2d at 899-900 (noting constitutional requirement that sentence enhancements follow jury's special verdict). The imposition of a sentence that conforms to the law can hardly be characterized as an unwarranted "benefit" to a defendant. Despite the dissent's protestations to the contrary, what it seeks is simply punishment for Wences's act of absconding.

-9-

made had [Wences] not failed to appear [at his sentencing hearing in 2005]." VTP (Mar. 23, 2015) at 3.

Applying the rule of *Williams-Walker* to the facts of this case, we hold that the jury's special verdict finding authorized only a deadly weapon enhancement, not a firearm enhancement. *See* 167 Wn.2d at 899-900; *see also* CP at 30 (jury finding that Wences was armed with a "deadly weapon"). Former RCW 9.94A.510(4)(b) (2001), *recodified as* RCW 9.94A.533(4)(b), authorized a one-year deadly weapon sentence enhancement if the defendant was armed with a deadly weapon during the commission of a class B felony or a crime with a statutory maximum sentence of 10 years.[5] This stands in contrast to former RCW 9.94A.510(3)(b) (2001), *recodified as* RCW 9.94A.533(3)(b), which authorized a three-year firearm sentence enhancement if the defendant was armed with a firearm during the commission of

---

[5] In evaluating Wences's sentence, we consider the enhancement statutes in effect in 2003 when he committed the underlying offense. CP at 86. This is in accordance with the statutory "savings clause," which provides,

> Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act.

RCW 10.01.040.

Subject to constitutional constraints, this provision "generally requires that crimes be prosecuted under the law in effect at the time they were committed." *State v. Pillatos*, 159 Wn.2d 459, 472, 150 P.3d 1130 (2007); *see also State v. Ross*, 152 Wn.2d 220, 227, 241, 95 P.3d 1225 (2004) (affirming the sentencing court's application of a statute that was in effect when the defendant committed the offense).

such a crime. Possession of methamphetamine with intent to deliver or manufacture carried a statutory maximum of 10 years at the time Wences committed that crime. Former RCW 69.50.401(a)(1)(ii) (1998). Consistent with *Williams-Walker*, the sentencing court was thus authorized to impose only a one-year deadly weapon sentence enhancement, rather than a three-year firearm sentence enhancement.

## CONCLUSION

A new rule of criminal procedure applies to all cases pending on direct review at the time the rule is announced. This workable, bright line standard contains no exception for absconding defendants. Applying the standard here requires evaluating Wences's challenge to his sentence in light of *Williams-Walker*, a new rule announced before his 2015 judgment and sentence. Under *Williams-Walker*, the jury's special verdict finding authorized only a deadly weapon enhancement, not the firearm enhancement imposed. We accordingly reverse the Court of Appeals and remand to the superior court for resentencing consistent with *Williams-Walker*.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Stephens J.

WE CONCUR:

Fairhurst, CJ.

Wiggins, J.

Johnson, J.

Madsen, J.

Gordon McCloud, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*

No. 93605-6

OWENS, J. (dissenting) — A jury convicted Marco Wences of possession of methamphetamine with intent to manufacture or deliver and possession of a deadly weapon. Rather than return to court for his sentencing hearing, Wences fled for nearly a decade. During the intervening years in which Wences evaded his sentencing, this court established a new criminal procedure rule for firearm and deadly weapon enhancements. *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010). The majority's decision to apply this rule to Wences' case, over nine years after he should have been sentenced, allows him to benefit from his flight. The majority ignores over 100 years of precedent treating absconding defendants differently from other criminal defendants. Because this decision departs from this important precedent and fashions a new rule essentially rewarding defendants who flee after conviction, I respectfully dissent.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*, No. 93605-6
Owens, J., Dissenting

The majority applies the general rule of finality in spite of this case's unique circumstances. The doctrine of finality provides that new rules for criminal prosecutions should be applied to all state and federal cases "pending on direct review or not yet final." *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326, 823 P.2d 492 (1992). However, this court has the authority and worthy cause to create an exception for defendants who abscond after conviction to avoid sentencing. If a case is not yet final solely because the defendant has fled and thus delayed court proceedings, it should not be regarded as "pending" in the normal sense. As opposed to regular minor court delays, such a case is put on hold because of the defendant's contempt of the legal system. The United States Supreme Court, when reviewing a case of a defendant who fled after appealing, aptly explained that "no court is bound to submit" to "contempt of its authority." *Allen v. State of Georgia*, 166 U.S. 138, 141, 17 S. Ct. 525, 41 L. Ed. 949 (1897). It is not in the interest of Washington courts to apply the general rule of finality to cases intentionally put on hold by absconding defendants. Instead, defendants who flee should be sentenced under the law at the time of the scheduled sentencing hearing rather than the law at whatever time they return to the court's jurisdiction.

Since 1902, this court has recognized that absconding defendants warrant exceptional treatment in the course of criminal adjudication. *See State v. Handy*, 27 Wash. 469, 470-71, 67 P. 1094 (1902) (appeal dismissed because defendant fled the

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

jurisdiction); *State v. Mosely*, 84 Wn.2d 608, 610, 528 P.2d 986 (1974) (appeal dismissed because defendant absconded prior to appellate oral argument); *State v. Johnson*, 105 Wn.2d 92, 97-98, 711 P.2d 1017 (1986) (appeal dismissed because defendant failed to appear at probation revocation hearing). The majority ignores this court's long-standing aversion to applying customary rules to absconding defendants. The majority insists that *St. Pierre* created a bright line standard for new rules of criminal procedure containing no exception for absconding defendants. Yet, this is the first case in this court that has demanded the exception. Based on a century of cases consistently creating procedural exceptions for absconding defendants, there is strong precedent to impose an exception in this case.

In addition to supporting precedent, there are two important policy grounds for creating an exception for absconding defendants. First, defendants should not benefit from absconding and evading sentencing. By sentencing Wences under the law at the time of his 2005 conviction, the trial court appropriately refused to afford him the benefit of legal developments established years after his scheduled sentencing. The majority labels this a punishment paradigm. This characterization is incorrect. It cannot be considered a punishment to follow the legal standards in place at the time Wences should have been sentenced had he abided by the court-ordered timeline. Rather, it is a refusal to confer a benefit for absconding. By failing to create an

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*, No. 93605-6
Owens, J., Dissenting

exception and allowing Wences to be sentenced under the law at the time of the 2015 sentencing hearing, the majority essentially rewards him for evading justice.

Second, the State is unfairly prejudiced by the majority's holding. The special verdict rule pronounced in *Williams-Walker* came in 2010, five years after Wences' trial. The State should not be expected to predict the development of criminal procedural law years down the road in order to properly secure a conviction and appropriate sentence. Here, the new rule of criminal procedure reduces the weapon enhancement from three years to one. However, the consequences of a different rule could be much more drastic, for example, overturning a conviction completely. The majority's decision to apply legal rules developed years after Wences' conviction establishes an impossible standard for the State.

The majority's decision forces the trial court to submit to Wences' contempt of its authority by rewarding him for absconding and imposes substantial uncertainty and costs on the State. I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*, No. 93605-6
Owens, J., Dissenting

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 93605-6

YU, J. (concurring in dissent)—I concur in the concerns raised by the

dissent. I would also affirm the Court of Appeals decision to uphold petitioner

Marco Bailon Wences' sentence because the new rule of criminal procedure

announced in *State v. Williams-Walker*, 167 Wn.2d 889, 225 P.3d 913 (2010), does

not apply to this case. The majority, however, believes that binding precedent

requires it to reach the opposite conclusion. I write separately to further explain

why that belief is unfounded and to support the dissent's justified indignation at the

majority's resolution of this case. I therefore respectfully concur in the dissent.

I agree with the majority that this case does not require us to reconsider the

rules for prospective and retrospective application of new rules of criminal

procedure that this court adopted in *In re Personal Restraint of St. Pierre*, 118

Wn.2d 321, 823 P.2d 492 (1992), which we have applied in numerous cases over

the years. Majority at 7 (quoting *St. Pierre*, 118 Wn. 2d at 326 (citing *Griffith v.*

*Kentucky*, 479 U.S. 314, 328, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987))); *e.g., In re*

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Pers. Restraint of Gentry*, 179 Wn.2d 614, 627, 316 P.3d 1020 (2014); *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 441, 309 P.3d 459 (2013); *In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 640, 272 P.3d 188 (2012); *In re Pers. Restraint of Markel*, 154 Wn.2d 262, 268-69, 111 P.3d 249 (2005).

However, this case *does* require us to apply those established rules to a novel situation presented by unusual facts. Thus, the question of whether *Williams-Walker* applies to Wences' sentence is a matter of first impression whose outcome, by definition, cannot be controlled by binding precedent. Instead, we must look to precedent that is not directly on point, but nevertheless relevant.

I agree with the majority that the *St. Pierre* line of cases is relevant here. *See* majority at 7-8. I further agree that Wences' appeal was not "final" in any sense of that word when *Williams-Walker* was decided. *Id.* at 6. In fact, his appeal was not even ripe yet because Wences absconded after his conviction, delaying his sentencing for over a decade. *Id.* at 2.

However, we are applying precedent, not interpreting statutes. That is an important difference for which the majority does not account. We always strive to interpret statutes in a manner that is consistent with legislative intent. *Columbia Riverkeeper v. Port of Vancouver USA*, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017). We assume that the legislature intends for courts to apply the plain meaning of its statutes whenever possible, so long as doing so does not produce

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

absurd results. *Id.* at 443. When we are mistaken in our assumptions or interpretations, the legislature may revise its statutory language in response to our opinion. *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 589-90, 344 P.3d 199 (2015). Indeed, if there were a statute that provided for the "mandatory application of new rules of criminal procedure to all defendants whose appeals are not yet final," without any further elaboration, I might be compelled reach the same result as the majority in this case. However, there is no such statute. Instead, we are applying the opinions of this court.

"By necessity, judicial opinions focus on the case, facts, and parties at hand, and any opinion reflects that focus." *Washburn v. City of Federal Way*, 178 Wn.2d 732, 751-52, 310 P.3d 1275 (2013). Therefore, when we apply relevant precedent to novel and distinguishable facts, we must take note of the specific issues that were considered and decided in that precedent. Only then should we decide whether and how our precedent helps in resolving the question presented.

The question presented here was most certainly not before the court in any of our prior cases. It is therefore no solution to say, as the majority does, that because *St. Pierre* refers to defendants whose appeals are not yet final, *any* defendant whose appeal is not yet final for *any* reason *must* be given the benefit of intervening new rules of criminal procedure. Majority at 7 (quoting *St. Pierre*, 118 Wn.2d at 326). Instead, because no case based on *St. Pierre* has decided the

3

question presented here, we should consider the reasoning and purposes underlying

*St. Pierre* and related cases, and resolve this case in a way that reflects those

considerations.

As *St. Pierre* itself states, application of new rules of criminal procedure,

even in cases that are not yet final on direct appeal, is not an independent

constitutional right. 118 Wn.2d at 325 (citing *Linkletter v. Walker*, 381 U.S. 618,

629, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965), *abrogated in part on other grounds

by Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989)). The

rules regarding prospective and retroactive application of new rules to pending

cases have been adopted and developed by the courts, not for the mere sake of

having such rules, but to support the constitutional right to equal protection of the

law. *See, e.g.*, *Griffith*, 479 U.S. at 327-28; *United States v. Johnson*, 457 U.S.

537, 555 n.16, 102 S. Ct. 2579, 73 L. Ed. 2d 202 (1982).

Because there is no independent constitutional right to prospective or

retroactive application of new criminal procedural rules, we should apply general

doctrines on that subject to novel factual scenarios (like the one presented here) in

a pragmatic way that advances the underlying "principle of treating similarly

situated defendants the same." *Griffith*, 479 U.S. at 323; *see State v. French*, 157

Wn.2d 593, 601-02, 141 P.3d 54 (2006) ("[B]ecause there is no federal

constitutional right to appeal, federal courts may rely on utilitarian and pragmatic

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

concepts such as mootness and disrespect to the judiciary to justify using the fugitive disentitlement doctrine."). Applying *Williams-Walker* to Wences' sentence plainly does not do so. Wences is not similarly situated to the vast majority of criminal defendants whose appeals are not yet final when new rules of criminal procedure are announced.

First, the most obvious difference is that most defendants do not delay their own proceedings by willfully absconding for over a decade. Instead, unlike Wences, most defendants remain in the jurisdiction, and many use proper legal channels to challenge their convictions or sentences by pursuing appeals with reasonable diligence in a timely manner. Fundamental fairness supports applying new rules of criminal procedure to such defendants; the primary reason their appeals are not yet final when the new rule is announced is that they have exercised their rights to actively engage in the justice system.

Meanwhile, the *only* reason Wences' appeal was not yet final when *Williams-Walker* was announced is that he intentionally and without justification *removed* himself from the reach of the justice system.[1] He cannot possibly be viewed as similarly situated to the vast majority of defendants who do not abscond.

---

[1] The majority suggests a number of hypothetical scenarios under which Wences' appeal might not have been final when *Williams-Walker* was decided even if he had not absconded. Majority at 6-7 n.2. I do not question that such scenarios could occur. However, Wences *did* abscond, and I cannot understand why the only person who delayed the proceedings without justification should be the only person who benefits from the doubts raised by that delay.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, on a national level, Wences is not even similarly situated to the majority of defendants who *do* abscond between conviction and sentencing because most jurisdictions have means to address such situations that Washington does not. Therefore, in most jurisdictions, there would not even be a *possibility* that an absconding defendant like Wences could benefit from new rules of criminal procedure that were adopted during his voluntary flight from justice.

For instance, in the federal system and many states, a willfully absconding defendant may be sentenced in absentia. *E.g.*, FED. R. CRIM. P. 43(c)(1)(B), (2); *State v. Anderson*, 929 P.2d 1107, 1112 (Utah 1996); *State v. Braun*, 253 Kan. 141, 145, 853 P.2d 686 (1993) (voluntarily absent defendant may be sentenced in absentia if there are "extraordinary circumstances" and "an injustice would occur by requiring his presence"); *Capuzzo v. State*, 596 So. 2d 438, 440 (Fla. 1992); *Williams v. State*, 526 N.E.2d 1179, 1180 (Ind. 1988); *People v. Corley*, 67 N.Y.2d 105, 109-10, 491 N.E.2d 1090, 500 N.Y.S.2d 633 (1986); *State v. Fettis*, 136 Ariz. 58, 59, 664 P.2d 208 (1983) (voluntarily absent defendant may be sentenced in absentia "in extraordinary circumstances"); *Byrd v. Ricketts*, 233 Ga. 779, 780, 213 S.E.2d 610 (1975); *Flowers v. State*, 608 So. 2d 764, 766 (Ala. Crim. App. 1992);

---

I also note that the majority's assertion that its bright-line rule is necessary to provide certainty in sentencing is misleading. *Id.* at 9. Applying the law as it existed when an absconding defendant was scheduled to be sentenced is also a bright-line rule that can be applied with certainty. It is uncertain only if one gives Wences the benefit of the doubt he personally created by absconding. *See id.* at 10-11.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Christopher Hall, Annotation, *Voluntary Absence of Accused When Sentence Is Pronounced*, 59 A.L.R. 5th 135 (1998). When a defendant is sentenced in absentia, the law at the time sentencing was scheduled to take place (in this case, the law prior to *Williams-Walker*) is applied from the outset, eliminating any possible confusion on appeal.

Washington courts have not considered whether a defendant who was present at trial can be sentenced in absentia if he or she absconds. However, our case law regarding trials in absentia explicitly require that the defendant be allowed to explain his or her absence from trial *prior to* sentencing, suggesting that while trial in absentia may be allowed in Washington, sentencing in absentia is not. *State v. Garza*, 150 Wn.2d 360, 367, 77 P.3d 347 (2003); *see* CrR 3.4(a) ("The defendant shall be present . . . at the imposition of sentence, except as otherwise provided by these rules."), (b) ("The defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial *to and including the return of the verdict*." (emphasis added)).

Moreover, in the federal system and many states, courts may (or, in some jurisdictions, must, *see, e.g.*, *Redden v. State*, 418 A.2d 996, 997 (Del. 1980)), dismiss a defendant's appeal pursuant to the fugitive disentitlement doctrine if (1) the defendant absconds without justification and (2) the delay causes prejudice to the justice system or to the State. While the rule varies slightly across

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

jurisdictions, these two prongs underpin the doctrine nationwide. *See Ortega-Rodriguez v. United States*, 507 U.S. 234, 239-40, 113 S. C. 1199, 122 L. Ed. 2d 581 (1993); *United States v. Sudthisa-Ard*, 17 F.3d 1205, 1206-08 (9th Cir. 1994); *United States v. Persico*, 853 F.2d 134, 138 (2d Cir. 1988); *United States v. Puzzanghera*, 820 F.2d 25, 27 (1st Cir. 1987); *State v. Brabham*, 301 Conn. 376, 377, 21 A.3d 800 (2011); *Hires v. State*, 2002-CT-00059-SCT, 882 So. 2d 225, 227-28 (Miss. 2004); *State v. Bell*, 2000 ND 58, 608 N.W.2d 232, 235-36; *State v. Troupe*, 891 S.W.2d 808, 811 (Mo. 1995); *State v. Patten*, 134 N.H. 319, 321, 591 A.2d 1329 (1991); *Reid v. Commonwealth*, 57 Va. App. 42, 50-52, 698 S.E.2d 269 (2010); *Polanski v. Superior Court*, 180 Cal. App. 4th 507, 531-33, 102 Cal. Rptr. 3d 696 (2009); James L. Buchwalter, Annotation, *Effect of Escape by, or Fugitive Status of, State Criminal Defendant on Availability of Appeal or Other Post-Verdict or Post-Conviction Relief—State Cases*, 105 A.L.R. 5th 529 (2003); Brian L. Porto, Annotation, *Application of Fugitive Disentitlement Doctrine in Federal Criminal Cases*, 179 A.L.R. Fed. 291 (2002). Again, we do not have this option in Washington. *French*, 157 Wn.2d at 602-03.

However, any jurist with the option to either sentence Wences in absentia or dismiss his *Williams-Walker* claim on appeal (that is, most jurists in the country) would almost certainly do so given the circumstances presented. It is clearly undisputed that Wences absconded without justification, and as the dissent ably

8

*State v. Wences*, No. 93605-6
(Yu, J., concurring in dissent)

points out, the justice system has suffered prejudice because of Wences' 11-year flight from justice, and will continue to do so when the majority's holding in this case is applied to future absconding defendants. Dissent at 4.

I also note that the long delay in sentencing in this case, for which Wences was solely responsible, was clearly prejudicial to the State. The jury is no longer available to make the necessary finding to impose a firearm enhancement on a properly worded special verdict form.[2] And in this case, it cannot reasonably be denied that the jury would have done so, given that it found Wences was armed with a deadly weapon and the only deadly weapon that was ever mentioned in this case was a firearm. Verbatim Report of Proceedings (Feb. 22, 2005) at 34, 70-71.

Thus, in most jurisdictions, a reasonable court presented with an absconding defendant like Wences would likely either sentence him in absentia without the benefit of *Williams-Walker* or dismiss the *Williams-Walker* claim on appeal. A Washington court has neither option.

These unusual features of Washington law and Wences' 11-year flight from justice clearly show that Wences is not similarly situated to the vast majority of defendants whose appeals are not yet final when new rules of criminal procedure are announced. The equal protection justification for applying the new rule

---

[2] I disagree with the majority's suggestion that the State should have foreseen and complied with a new rule of criminal procedure that would not be announced until five years after Wences absconded. *See* majority at 3-5.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

announced in *Williams-Walker* thus disappears under the circumstances presented. *See Griffith*, 479 U.S. at 327-28.

The dissent clearly explains the absurd results and perverse incentives created by the majority opinion, concerns with which even the majority opinion purports to "sympathize." Majority at 9; dissent at 3. And because prospective and retroactive application of new rules of criminal procedure to pending cases is not an independent constitutional right, we should not apply it in cases like this one, where there is no justification for doing so and it produces obvious injustice. Therefore, *Williams-Walker* does not apply to Wences' case. We should affirm the Court of Appeals.

Finally, I must note that it appears the majority would reach the same conclusion if the intervening change in law were *harmful* to the defendant, as nothing in its analysis suggests a reasoned way to distinguish such a case. However, applying the new rule of criminal procedure under those circumstances would impose the punitive approach that the majority claims to reject.

By way of illustration, suppose a defendant is in hiding outside of Washington, having absconded after his or her conviction but before sentencing. If *Williams-Walker* is overruled while the defendant is in hiding, the defendant would not be allowed to raise a *Williams-Walker* claim on appeal after he or she is finally apprehended and sentenced because "'a new rule for the conduct of criminal

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

prosecutions is to be applied . . . to all cases, state or federal, pending on direct review or not yet final.'" Majority at 1-2 (alteration in original) (quoting *St. Pierre*, 118 Wn.2d at 326). Therefore, if the trial court were to impose a firearm enhancement on the basis of a deadly weapon special verdict, the defendant would have no recourse because such an enhancement would comply with the law at the time of sentencing, even though it was prohibited by the law at the time of conviction. This means that the sentencing delay caused by the defendant's flight from justice would directly result in a longer sentence.

The majority purports to reject any such "punishment paradigm," majority at 9, but, as the above example illustrates, the majority's reasoning clearly allows for it. Meanwhile, as pointed out by the dissent, refusing to apply *Williams-Walker* in this case is not a punishment at all, but merely a refusal to reward Wences for absconding. Dissent at 1.

CONCLUSION

We do not apply new rules of criminal procedure to pending cases for the mere sake of doing so. We do so to promote equal protection of the laws. Giving Wences the benefit of *Williams-Walker* directly undermines equal protection because Wences is not similarly situated to the vast majority of defendants whose appeals are not yet final when new rules of criminal procedure are announced

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*, No. 93605-6
(Yu, J., concurring in dissent)

because Wences willfully absconded for 11 years. I would therefore affirm the

Court of Appeals and respectfully concur in the dissent.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Wences*, No. 93605-6
(Yu, J., concurring in dissent)

_____

Yu, J

González, J.

13